KARTHIK K. MURTHY – State Bar No. 343,960
K@MurthyPatentLaw.com
MURTHY PATENT LAW PLLC
P.O. Box 15110
Mill Creek, WA 98082
Telephone: (425) 968-5342
Facsimile: (425) 215-0247

Attorneys for Plaintiff

Backertop Licensing, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BACKERTOP LICENSING, LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>FANTASIA TRADING LLC<br><br>      Defendants. | Case No:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Backertop Licensing, LLC ("Plaintiff" or "Backertop"), files this complaint and demand for jury trial seeking relief for patent infringement by Fantasia Trading LLC ("Defendant" or "Fantasia"), of United States Patent Nos. 9,332,385 ("the '385 patent") and 9,654,617 ("the '617 patent") (collectively, "the Asserted Patents").

Backertop states and alleges the following:

## NATURE OF ACTION

1. This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*, specifically including 35 U.S.C. § 271.

## THE PARTIES

2. Backertop is a limited liability company, organized and existing under the laws of the State of Texas, having a place of business at 2100 14th St., Suite 107 (PMB 1044), Plano, TX 75074.

3. Upon information and belief, Fantasia is a Delaware corporation with its principal place of business located in San Bernardino County and has a mailing address of 5350 Ontario Mills Pkwy, suite 100, Ontario, CA 91764.

4. Upon information and belief, there may be other corporate affiliates of Fantasia who participated in the infringing acts complained of herein. The identities of such affiliates are currently unknown, because publicly available information does not permit the identification of each affiliate who participated in the infringing acts. Plaintiff expects the identities of such affiliates to be revealed in discovery. Plaintiff reserves the right to amend this Complaint to name such affiliates, if necessary, once they have been revealed.

## JURISDICTION AND VENUE

5. This Court has original and exclusive subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a), because Backertop's claims for patent infringement arise under 35 U.S.C. 271.

6. This court has personal jurisdiction over the Defendant because: it resides, has its principal place of business, and is incorporated in this District; it has a continuous, systematic

and substantial presence in this District; it regularly conducts business and/or solicits business within this District; and it has committed or induced patent infringement and continues to commit or induce patent infringement in this District. This infringement includes, without limitation, selling and offering for sale infringing products to consumers in this District, purposefully directing activities at residents of this District, and placing infringing products into the stream of commerce with the knowledge that such products would be sold in this District. These acts form a substantial part of the events giving rise to Backertop's claims.

7. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because the Defendant resides in this District, has its principal place of business located in this District, has a physical and established place of business in this District, has committed acts of infringement, and has a regular and established place of business in this District.

## FACTUAL BACKGROUND

**Backertop's Patented Technology**

8. The Asserted Patents relate to selectively providing content to users located within a virtual perimeter, utilizing wireless communication between a mobile device and at least one beacon.

9. The '385 Patent generally relates to selectively providing content to users located within a virtual perimeter, utilizing wireless communication between a mobile device and at least one beacon.

10. The '617 Patent generally relates to selectively providing content to users located within a virtual perimeter, utilizing wireless communication between a mobile device and at least one beacon.

**Defendant's use of Backertop's Innovations**

11. Fantasia's infringing products are its Eufy Solo OutdoorCam C24 & Eufy Security mobile application ("the Accused Products"). Upon information and belief, Fantasia sells its Eufy Solo OutdoorCam C24 through

https://us.eufy.com/collections/security/products/t8441z21 and sells its Eufy Security mobile application through https://us.eufy.com/pages/security-app-download.

## Count I

**(Infringement of U.S. Patent No. 9,332,385)**

12. Backertop incorporates by reference the allegations in the preceding paragraphs of its Complaint.

13. The U.S. Patent Office duly and properly issued the '385 patent, entitled "Selectively providing content to users located within a virtual perimeter." Backertop is the assignee of all rights, title, and interest in and to the '385 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '385 patent is valid and enforceable. A true and correct copy of the '385 patent is attached to this Complaint as Exhibit A.

14. On information and belief, Defendant has directly infringed at least claim 1 of the '385 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271(a).

15. On information and belief, Defendant has indirectly infringed at least claim 1 of the '385 patent by inducing users and retailers of the Accused Products to directly infringe at least claim 1 of the '385 patent in violation of 35 U.S.C. § 271(b).

16. On information and belief, Defendant has contributed to the infringement of at least claim 1 of the '385 patent by the use and/or importation of the Accused Products in violation of 35 U.S.C. § 271(c).

17. Backertop has been irreparably harmed by Defendant's infringement of the '385 patent and will continue to be harmed unless and until Defendant's infringement is enjoined by this Court.

18. By its actions, Defendant has injured Backertop and is liable to Backertop for infringement of the '385 patent pursuant to 35 U.S.C. § 271. Backertop is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

**(Validity of U.S. Patent No. 9,332,385)**

19. The '385 patent claims patent-eligible subject matter.

20. "The prior art, including Imbimbo [U.S. patent publication 2012/0059913] and LaMarca [U.S. patent publication 2014/0171052] doesn't disclose: responsive to receiving from the mobile device a response to the first message indicating that the at least one application is disabled, authorizing, using a processor, the mobile device to establish presence on a network maintained for the physical location."  This is from paragraph 1, page 4 [pdf page 6] of the November 5, 2015 Non-final rejection in the prosecution of the '385 patent, and can be found here:

https://patentcenter.uspto.gov/applications/14621636/ifw/docs

21. The November 5, 2015 Non-final rejection in the prosecution of the '385 patent is attached to this Complaint as Exhibit B.

22. The patentee and the U.S. patent and trademark office reviewed the prior art regarding receiving from a mobile device a response to a first message indicating at least one application is disabled.  The U.S. patent and trademark office found the quoted section above (paragraph 15) to not be disclosed in the prior art, and so that section discloses the inventive concept of the '385 patent.

23. This prior art featured a "Method and Device for Controlling Communication in an Internet Protocol Multimedia Subsystem IMS" [Imbimbo] and "Location-aware mobile application management" [LaMarca].

24. Claim 1 of the '385 patent recites:

"A method, comprising:

based on wireless communication between a mobile device and at least one beacon, identifying a present physical location of a mobile device;

responsive to determining that the mobile device is located at a particular physical location, communicating to the mobile device at least a first message, the first message

specifying at least one application to be disabled while the mobile device is present at the physical location; and

responsive to receiving from the mobile device a response to the first message indicating that the at least one application is disabled, authorizing, using a processor, the mobile device to establish presence on a network maintained for the physical location."

The last section (the last 3 lines) discloses the inventive concept of the '385 patent.

25. Claim 8 of the '385 patent recites:

"A system, comprising:

a processor programmed to initiate executable operations comprising:

based on wireless communication between a mobile device and at least one beacon, identifying a present physical location of a mobile device;

responsive to determining that the mobile device is located at a particular physical location, communicating to the mobile device at least a first message, the first message specifying at least one application to be disabled while the mobile device is present at the physical location; and

responsive to receiving from the mobile device a response to the first message indicating that the at least one application is disabled, authorizing, using a processor, the mobile device to establish presence on a network maintained for the physical location."

The last section (the last 3 lines) discloses the inventive concept of the '385 patent.

26. The specification of the '385 patent ("Specification") discloses a number of disadvantages with previous approaches to providing efficient network services to mobile devices. The Specification discloses that mobile device users typically spend more time using mobile applications to access web based content than they spend using web browsers – a disparity that has grown over the years. As disclosed in the Specification, that disparity was due (at least in part) to the fact that a well-designed mobile application typically delivered a superior user experience when compared to a web browser. (*Id*. at col. 1:9-27).

27. With respect to this issue, the Specification discloses that mobile applications are much like desktop software – in that they can store content resources locally – whereas a web

browser must retrieve all content data from a web server. In the context of a mobile device application, interface controls of an application operate without the lag time and overhead typically associated with web browser interface controls. *Id*. Thus, using web browsers to access application based content is inferior to access via an actual application – web browser based access is simply slower than application based access. Improved access speed via applications does come at a cost, and that is the local storage of content resources. Of further significance is the fact that mobile applications can selectively access functional features and operations of a mobile device, which may not be possible for a website being accessed via a web browser.

28.  Thereafter, the Specification discloses a number of inventive embodiments for providing more efficient application-driven network and content access to a mobile device, in general, and more efficient application-driven mobile device access to a network (and content) maintained in relation to a physical location. In certain embodiments, the mobile device's proximity to, or presence at, the physical location may trigger selective enablement or disablement of applications on the mobile device in order to facilitate more efficient access to the network or its content. (*Id*. at col. 3:57 – col. 4:49).

29.  Claim 1 of the '385 patent "do[es] not, simply recite, without more, the mere desired result of" providing access content, "but rather recite[s] a specific solution for accomplishing that goal." *Koninklijke*, 2019 U.S. App. 34075, *19. Claim 1 "sufficiently capture[s] the inventors' asserted technical contribution to the prior art by reciting how the solution specifically improves the function of prior art [ ] systems." *Id*.

30.  The invention recited in claim 1 of the '385 patent is not merely managing access to content in a particular physical location. Rather, the invention comprises messaging constructs between a mobile device and a network device, indicating an application on the mobile device that must, and is, disabled prior to network access. ('385 patent at col. 15:35-44). This claims how to solve problems of inefficient data storage and lag times in the prior art of authorizing network and content access, not a result. *Visual Memory*, 867 F.3d at 1259; *Bascom*, 827 F.3d at 1350 ("Filtering content on the Internet was already a known concept, and the patent

describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content.").

### Count II

**(Infringement of U.S. Patent No. 9,654,617)**

31. Backertop incorporates by reference the allegations in the preceding paragraphs of its Complaint.

32. The U.S. Patent Office duly and properly issued the '617 patent, entitled "Selectively providing content to users located within a virtual perimeter." Backertop is the assignee of all rights, title, and interest in and to the '617 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '617 patent is valid and enforceable. A true and correct copy of the '617 patent is attached to this Complaint as Exhibit C.

33. On information and belief, Defendant has directly infringed at least claim 1 of the '617 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271(a).

34. On information and belief, Defendant has indirectly infringed at least claim 1 of the '617 patent by inducing users and retailers of the Accused Products to directly infringe at least claim 1 of the '617 patent in violation of 35 U.S.C. § 271(b).

35. On information and belief, Defendant has contributed to the infringement of at least claim 1 of the '617 patent by the use and/or importation of the Accused Products in violation of 35 U.S.C. § 271(c).

36. Backertop has been irreparably harmed by Defendant's infringement of the '617 patent and will continue to be harmed unless and until Defendant's infringement is enjoined by this Court.

37. By its actions, Defendant has injured Backertop and is liable to Backertop for infringement of the '617 patent pursuant to 35 U.S.C. § 271. Backertop is entitled to damages as set forth in at least 35 U.S.C. §§ 284 and 285.

**(Validity of U.S. Patent No. 9,654,617)**

38. The '617 patent claims patent-eligible subject matter.

39. "The prior art, including Imbimbo [U.S. patent publication 2012/0059913] and LaMarca [U.S. patent publication 2014/0171052] doesn't disclose: responsive to receiving from the mobile device a response to the first message indicating that the at least one application is disabled, authorizing, using a processor, the mobile device to establish presence on a network maintained for the physical location." This is from paragraph 1, page 4 [pdf page 6] of the November 5, 2015 Non-final rejection in the prosecution of the '385 patent. The '617 patent claims priority to the '385 patent, so the November 5, 2015 Non-final rejection is also applicable to the '617 patent. The Non-final rejection can be found here: https://patentcenter.uspto.gov/applications/14621636/ifw/docs.

40. The November 5, 2015 Non-final rejection in the prosecution of the '385 patent is attached to this Complaint as Exhibit B.

41. The patentee and the U.S. patent and trademark office reviewed the prior art regarding receiving from a mobile device a response to a first message indicating at least one application is disabled. The U.S. patent and trademark office found the quoted section above (paragraph 29) to not be disclosed in the prior art, and so that section discloses the inventive concept of the '617 patent.

42. This prior art featured a "Method and Device for Controlling Communication in an Internet Protocol Multimedia Subsystem IMS" [Imbimbo] and "Location-aware mobile application management" [LaMarca].

43. Claim 1 of the '617 patent recites:

"A computer program product comprising a computer readable storage medium having program code stored thereon, the program code executable by a processor to perform a method comprising:

based on wireless communication between a mobile device and at least one beacon, identifying, by the processor, a present physical location of a mobile device;

>responsive to determining that the mobile device is located at a particular physical location, communicating, by the processor, to the mobile device at least a first message, the first message specifying at least one application to be disabled while the mobile device is present at the physical location; and
>
>responsive to receiving from the mobile device a response to the first message indicating that the at least one application is disabled, authorizing, by the processor, the mobile device to establish presence on a network maintained for the physical location."

The last section (the last 3 lines) discloses the inventive concept of the '617 patent.

44. The specification of the '617 patent ("Specification 2") discloses a number of disadvantages with previous approaches to providing efficient network services to mobile devices. The Specification 2 discloses that mobile device users typically spend more time using mobile applications to access web based content than they spend using web browsers – a disparity that has grown over the years. As disclosed in the Specification 2, that disparity was due (at least in part) to the fact that a well-designed mobile application typically delivered a superior user experience when compared to a web browser. (*Id*. at col. 1:9-27).

45. With respect to this issue, the Specification 2 discloses that mobile applications are much like desktop software – in that they can store content resources locally – whereas a web browser must retrieve all content data from a web server. In the context of a mobile device application, interface controls of an application operate without the lag time and overhead typically associated with web browser interface controls. *Id*. Thus, using web browsers to access application based content is inferior to access via an actual application – web browser based access is simply slower than application based access. Improved access speed via applications does come at a cost, and that is the local storage of content resources. Of further significance is the fact that mobile applications can selectively access functional features and operations of a mobile device, which may not be possible for a website being accessed via a web browser.

46. Thereafter, the Specification 2 discloses a number of inventive embodiments for providing more efficient application-driven network and content access to a mobile device, in

general, and more efficient application-driven mobile device access to a network (and content) maintained in relation to a physical location. In certain embodiments, the mobile device's proximity to, or presence at, the physical location may trigger selective enablement or disablement of applications on the mobile device in order to facilitate more efficient access to the network or its content. (*Id*. at col. 3:31 – col. 4:23).

47. Claim 1 of the '617 patent "do[es] not, simply recite, without more, the mere desired result of" providing access content, "but rather recite[s] a specific solution for accomplishing that goal." *Koninklijke*, 2019 U.S. App. 34075, *19. Claim 1 "sufficiently capture[s] the inventors' asserted technical contribution to the prior art by reciting how the solution specifically improves the function of prior art [ ] systems." *Id*.

48. The invention recited in claim 1 of the '617 patent is not merely managing access to content in a particular physical location. Rather, the invention comprises messaging constructs between a mobile device and a network device, indicating an application on the mobile device that must, and is, disabled prior to network access. ('617 patent at col. 15:28-38). This claims how to solve problems of inefficient data storage and lag times in the prior art of authorizing network and content access, not a result. *Visual Memory*, 867 F.3d at 1259; *Bascom*, 827 F.3d at 1350 ("Filtering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content.").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court enter judgment against Defendant:

a) Finding that Defendant directly infringed the Asserted Patents;
b) That Defendant has induced infringement of the Asserted Patents;
c) That Defendant has contributed to infringement of the Asserted Patents;

d)      Awarding damages adequate to compensate Backertop for the patent infringement that has occurred, in accordance with 35 U.S.C. § 284, including an assessment of pre-judgment and post-judgment interest and costs, and an accounting as appropriate for infringing activity not captured within any applicable jury verdict and/or up to the judgment and an award by the Court of additional damages for any such acts of infringement;

e)      Awarding Backertop an ongoing royalty for Defendant's post-verdict infringement, payable on each product offered by Defendant that is found to infringe one or more of the Asserted Patents, and on all future products that are not colorably different from those found to infringe, or in the alternative, permanently enjoining Defendant from further infringement;

f)      Providing an award of all other damages permitted by 35 U.S.C. § 284;

g)      Finding that this is an exceptional case and an award to Backertop of its costs, expenses, and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

h)      Providing such other relief, including other monetary and equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Backertop demands trial by jury on all issues on which trial by jury is available under applicable law.

Dated:  November 23, 2022                                  **MURTHY PATENT LAW PLLC**

By:   /s/ Karthik K. Murthy
Karthik K. Murthy
State Bar No. 343,960
K@MurthyPatentLaw.com
Murthy Patent Law PLLC
P.O. Box 15110
Mill Creek, WA 98082
Telephone: (425) 968-5342
Facsimile: (425) 215-0247

*Attorneys for Plaintiff*
BACKERTOP LICENSING, LLC